*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0157P (6th Cir.)
File Name: 00a0157p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

  *v.*                              No. 96-6313

KENNETH EUGENE ALLEN,
  *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
No. 96-00023—Curtis L. Collier, District Judge.

Argued: December 8, 1999

Decided and Filed: May 4, 2000

Before: MARTIN, Chief Judge; MERRITT, RYAN,
BOGGS, NORRIS, SUHRHEINRICH, SILER,
BATCHELDER, DAUGHTREY, MOORE, COLE, CLAY,
and GILMAN, Circuit Judges.

_____

### COUNSEL

**ARGUED:** David Ness, FEDERAL DEFENDER
SERVICES OF EASTERN TENNESSEE, INC.,
Chattanooga, Tennessee, for Appellant. David P. Folmar, Jr.,
ASSISTANT UNITED STATES ATTORNEY, Knoxville,
Tennessee, for Appellee. **ON BRIEF:** Deirdra J. Brown,

1

FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Chattanooga, Tennessee, Leah J. Prewitt, FEDERAL DEFENDER SERVICES, Knoxville, Tennessee, for Appellant. David P. Folmar, Jr., ASSISTANT UNITED STATES ATTORNEY, Knoxville, Tennessee, Paul W. Laymon, Jr., ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee.

BOGGS, J., delivered the opinion of the court, in which MERRITT, RYAN, NORRIS, SUHRHEINRICH, SILER, BATCHELDER, and DAUGHTREY, JJ., joined. GILMAN, J. (pp. 13-16), delivered a separate opinion concurring in the judgment, in which MARTIN, C. J., joined. CLAY, J. (pp. 17-33), delivered a separate dissenting opinion, in which MOORE and COLE, JJ., joined.

---

## OPINION

---

BOGGS, Circuit Judge. Kenneth Eugene Allen pled guilty to an indictment charging him with possession of crack cocaine and an illegal firearm, after his motion to suppress evidence seized pursuant to a warrant issued on an allegedly insufficient affidavit was denied by the district court. He appealed that denial. A panel of this court ruled that the affidavit was insufficient to provide probable cause for the warrant, and reversed his conviction. *United States v. Allen*, 168 F.3d 293 (6th Cir. 1999). We granted a rehearing *en banc*, and now hold that an affidavit based upon personal observation of criminal activity by a confidential informant who has been named to the magistrate and who, as the affidavit avers, has provided reliable information to the police in the past about criminal activity, though without further specificity as to the type of such activity, can be sufficient for a magistrate to find probable cause to issue a warrant. We affirm the district court's denial of Allen's motion to suppress evidence, and Allen's subsequent conviction.

# I

On October 11, 1995, Detective Gary Lomenick of the Chattanooga Police Department received a tip from a confidential informant ("CI") that a man called Red Dog, residing at 910 North Market Street, was in possession of cocaine. Red Dog was familiar to other officers, though not to Lomenick, as someone known to be involved with drugs, named Kenneth Allen. Based on the CI's information, Lomenick sought and obtained a search warrant that same day. The affidavit read in full as follows:

I, Gary Lomenick, a duly sworn Chattanooga Police Officer, hereby apply for a search warrant and make oath as follows:

1. I am a sworn Chattanooga Police Officer with the Narcotics Division, where I have been assigned for over 15 years, and a commissioned Special Deputy Sheriff for Hamilton County, Tennessee.

2. On the 11th day of October 1995 I Gary Lomenick received information from an informant, a responsible and credible citizen of the county and state, who I know to be a responsible and credible citizen because, I have known said informant for 5 years and said informant has given me information about individuals involved in criminal activity in the past that has proven to be reliable. Said informants's name whom I have this day disclosed to the Judge to whom this application is made, that [sic] John Doe (Alias) Red Dog who resides in or occupies and is in possession of the following described premises 910 North Market Street, apartment directly underneath carport located in Chattanooga, Hamilton County Tennessee, unlawfully has in his possession on said premises legend and/or narcotic drugs including Cocaine in violation of law made and provided in such cases.

3. On the 11th day of October 1995 said informant advised me that said informant was on the premises of the said John Doe (Alias) Red Dog located at 910 North

Market Street, apartment directly underneath carport within seventy-two hours prior to our conversation on October 11th, 1995 and while there saw Cocaine in possession of the said John Doe (Alias) Red Dog[.]

WHEREFORE, as such officer acting in performance of my duty in the premises I pray that the Court issue a warrant authorizing the search of the said John Doe (Alias) Red Dog and the premises located at 910 North Market Street, apartment directly underneath the carport, for said legend and/or narcotic drugs including Cocaine and that such search be made either by day or by night.

*Id*. at 296-97.

Lomenick executed the warrant that day, with a team of other officers. When they approached the building, Allen, who was on a porch, saw them and fled inside. The officers gave chase. As Allen ran past a closet, the police heard a loud thump, and shortly thereafter found a 9-mm pistol on the floor of the closet. Allen left a trail of crack cocaine rocks behind him as he fled. When he was apprehended, more rocks of crack were found in his pockets, totaling 9.3 grams in all.

Allen was indicted on March 12, 1996. He was charged with (1) possession of cocaine base with intent to distribute, in violation of 21 U.S.C. § 841; (2) possession of a firearm in connection with a drug offense, in violation of 18 U.S.C. § 924(c); and (3) possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g). In a motion filed on April 18, 1996, he moved to suppress the evidence as illegally seized, alleging that the indictment was based on an insufficient affidavit, one that did not provide probable cause, since it did not claim or detail any expertise or previous reliability in *narcotics* contexts on the part of the CI. The district court referred the motion to a magistrate judge for a report and recommendation, which was filed May 15, 1996, and which recommended the motion's denial. This recommendation was adopted by the district court in an order filed May 31, 1996. Allen pled guilty to counts (1) and (2) pursuant to a plea agreement entered on June 14, 1996, and

529, 532 (5th Cir. 1986) (finding that the case fell under *Leon's* third exception because an officer could not obtain a warrant based upon a bare bones affidavit, and then rely upon the same bare bones affidavit to justify his alleged good faith belief in the warrant).

Indeed, *Leon* was not intended to make a mockery of the Fourth Amendment's warrant requirement, but the concurrence uses *Leon* exactly for that purpose today, and fulfills Justice Stevens' prophetic concern regarding the potential for abuse under *Leon's* good faith exception: "Under the . . . new rule, even when the police know their warrant application is probably insufficient, they retain an incentive to submit it to a magistrate, on the chance that he may take the bait. No longer must they hesitate and seek additional evidence in doubtful cases." *Leon,* 468 U.S. at 974 (Stevens, J., concurring in part and dissenting in part).

Accordingly, for the above stated reasons, I would reverse the district court's order denying Defendant's motion to suppress the evidence because the affidavit submitted in support of the warrant was nothing more than a ratification of the bare bones assertion of a reliable informant – which was unsupported by any police corroboration or other indicia of reliability – and therefore failed to establish probable cause.

---

the warrant was applied for and issued prior to the *Weaver* decision. *See United States v. Weaver,* 99 F.3d 1372 (6th Cir. 1998). *Weaver* simply interpreted *Leon* and applied it to the facts of the case before it; *Weaver* certainly did not – and in fact could not – change the exceptions to the good faith provision as articulated by the Supreme Court. *See id. at* 1380-81; *see also supra* note 1. Before *Weaver* was decided, and indeed until the Supreme Court states otherwise, an officer cannot have a good faith belief in a warrant that is based upon nothing more than a bare bones affidavit. This is *Leon's* command, not *Weaver's*, and it is the premise upon which Lomenick was acting at the time he applied for the warrant, as well as the premise upon which his actions are judged.

falls squarely within the third exception to *Leon's* good faith provision – that the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, or that the warrant application was supported by nothing more than a bare bones affidavit – so that any doubt about the illegality of the search is put to rest. *Id.* at 914-15, 923. If the concurrence was correct in its application of *Leon* under these facts, then any officer could obtain a warrant on the bare, generalized assertions of an informant secure in the knowledge that even if the warrant was held invalid for a lack of probable cause, the search would be saved by nothing more than the officer's *alleged* "good faith." Surely every officer seeking a warrant inherently makes such an allegation; however, *Leon* expressly states that more is needed for the good faith exception to apply -- i.e., there must be evidence that the officer had an objective good faith belief. *See id.*

It is precisely the lack of *objective* evidence to support a finding of good faith necessary to save the search that takes this case out of *Leon's* reach. Although the concurrence agrees that the warrant was not supported by probable cause because "in the absence of greater specificity, the special judge who issued the warrant in this case could not have had a substantial basis for concluding that a search of Allen's residence would uncover any illegal drugs," it goes on to hold that *Leon* applies to save the illegal search because Lomenick held a good faith belief that the warrant was valid, without any further support for this declaration. I believe that one cannot legally or logically agree that the affidavit was so woefully lacking in any indicia of specificity that it failed to provide the magistrate with a substantial basis to conclude that probable cause existed to allow the warrant to issue, and yet conclude that based upon the same woefully lacking affidavit, Lomenick's belief in the warrant's existence was reasonable.[4] *See, e.g., United States v. Barrington,* 806 F.2d

[4] Likewise, because I believe that there is nothing to indicate that Lomenick held a good faith belief that the warrant was validly issued based upon the bare bones affidavit, I think it of little consequence that

was sentenced to sixteen years and three months in prison. He had reserved his right to appeal, and an appeal to this court ensued.

## II

Our review of the sufficiency of an affidavit underlying a search warrant follows, as it must, the principles laid down by the Supreme Court in *Illinois v. Gates*, 462 U.S. 213 (1983). There, the Court rejected the rigid tests that had evolved as lower courts attempted to implement earlier Supreme Court decisions, in favor of a "totality of the circumstances" approach. *Id.* at 230-31 (abandoning the inflexible two-part test developed in the light of *Aguilar v. Texas*, 378 U.S. 108 (1964), and *Spinelli v. United States,* 393 U.S. 410 (1969)). The Court explained its deviation from the earlier approach in this way:

> "[V]eracity," "reliability" and "basis of knowledge" are all highly relevant in determining the value of [a CI's] report. We do not agree, however, that these elements should be understood as entirely separate and independent requirements to be rigidly exacted in every case . . . . Rather, . . . they should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is "probable cause" to believe that contraband or evidence is located in a particular place.

*Id.* at 230.

*Gates* also guides our deference to the issuing magistrate's determination of probable cause: "line-by-line scrutiny [of an underlying affidavit is] . . . inappropriate in reviewing [a] magistrate['s] decisions." *Id.* at 246 n.14. The Court emphasized in that case that it had "repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review." *Id.* at 236. It soundly rejected "[a] grudging or negative attitude by reviewing courts toward warrants" *Ibid.* (quoting *United States v. Ventresca*, 380 U.S. 102, 108 (1965)). Rather,

reviewing courts are to accord the magistrate's determination "great deference" *Ibid.* (quoting *Spinelli*, 393 U.S. at 419). The Court stressed that a hypertechnical critique of warrants would only, in the end, encourage warrantless searches, undermining the very Fourth Amendment right such an approach would seek to protect. Instead, it reaffirmed the traditional standard:

> Reflecting this preference for the warrant process, the traditional standard for review of an issuing magistrate's probable cause determination has been that so long as the magistrate had a "substantial basis for . . . conclud[ing]" that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more.

*Ibid.* (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). This circuit has long held that an issuing magistrate's discretion should only be reversed if it was arbitrarily exercised. *See United States v. Swihart*, 554 F.2d 264, 267-68 (6th Cir. 1977).

The *Allen* panel examined for guidance three decisions of this court, formulated in the light of *Gates*. These are: *United States v. Pelham*, 801 F.2d 875 (1986); *United States v. Finch*, 998 F.2d 349 (1993); and *United States v. Weaver*, 99 F.3d 1372 (1996). But as the dissent in *Allen* pointed out, these cases themselves, particularly the last, would appear to yield an inconsistent standard; the hope was accordingly expressed that this court, sitting *en banc*, would "clarify the law in this circuit regarding the necessary requirements for the issuance of a search warrant based on uncorroborated information from an informant." 168 F.3d at 308 (Gilman, J., concurring in part and dissenting in part).

*Pelham* held that an affidavit naming an informant, and stating that the informant had personally observed marijuana being stored and sold on certain premises in the immediate past, provided a "substantial basis" for believing that a search would uncover evidence of criminal activity there, and therefore was sufficient for a magistrate to find that probable cause existed for a warrant to issue.

was lacking in specificity and detail, and was not corroborated by independent police investigation. As emphasized above, the particularized inquiry under a totality of the circumstances as prescribed by *Gates* is not limited to those instances where the informant was anonymous.

### III.

My opinion should not be mistaken as a call to return to the rigid mandates of *Aguilar* and *Spinelli*. To the contrary, the Supreme Court has made clear that the factors required by these decisions best lend themselves to a probable cause analysis when they are balanced and weighed in light of the totality of the circumstances. *Gates,* 462 U.S. at 230-31. The Court has also directed that the credibility and persuasiveness of one factor can compensate for the lack of the other in order to support a finding of probable cause. *Id.* at 238-39. However, with equal force the Court has commanded that *both* the veracity or reliability of the informant as well as the basis for knowledge of the tip must be weighed and considered, *see id.* at 230-31; contrariwise, the rule espoused by the majority today allows for a warrant to issue based simply upon a generalized assertion regarding the reliability of the informant. Such a result finds no support in *Gates* and surely no support in the history of the Fourth Amendment. Under the majority's approach, the Fourth Amendment's warrant requirement is eviscerated, and now amounts to little more than an inconsequential formality and a mere "form of words." *See Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 392 (1920). As a result, the citizens in this circuit cannot rest easily or feel secure in their homes against unreasonable searches and seizures.

On a final note, I disagree with the concurrence that the illegal search is saved by the good faith exception to the warrant requirement as enunciated in *United States v. Leon,* 468 U.S. 897 (1984). Like its hyperbolic "apocalyptic sentiments" language, the concurring opinion's belief that "Lomenick 'acted in objective good faith' when he relied on the warrant" as set forth in *Leon,* is unfounded. This case

considered the totality of the circumstances to provide the requisite particularity for the warrant to issue.  In the instant case, however, the majority makes probable cause a *fait accompli* once the informant's tip is considered. It is not coincidental or a mere slip of the pen that the majority cites no authority for its sweeping declaration.

However, support for my position is well-steeped not only in *Gates*, but also in the Supreme Court's decision in *Alabama v. White,* 496 U.S. 325, 330 (1990), where the Court articulated the standard for "reasonable suspicion." Specifically, the Court found that although "reasonable suspicion is a less demanding standard than probable cause[,] . . . like probable cause, [reasonable suspicion] is dependent upon *both* the content of information possessed by police *and* its degree of reliability. *Both factors – quantity and quality – are considered in the 'totality of the circumstances – the whole picture.'" See id.* (emphasis added) (quoting *United States v. Cortez,* 449 U.S. 411, 417 (1981)); *see also Florida v. J.L.,* ___ U.S. ___, No. 98-1993, 2000 WL 309131 (Mar. 28, 2000). It logically follows that if reasonable suspicion, a standard less demanding than probable cause, cannot be found without a consideration of both the quantity and quality of the information provided, surely probable cause cannot be found without a consideration of both of these factors.

Furthermore, the majority makes a futile attempt to distinguish those cases where the affidavits were found to be insufficient to establish probable cause, solely on the basis that the informant was anonymous or that the affidavit was lacking as to the informant's reliability.  *See Ante* (citing *United States v. Reddrick,* 90 F.3d 1276, 1280 (7th Cir. 1996); *United States v. Leake,* 998 F.2d 1359, 1365 (6th Cir 1993); *United States v. Gibson,* 928 F.2d 250, 253 (8th Cir. 1991); *United States v. Mendonsa,* 989 F.2d 366, 369 (9th Cir. 1993)).  In my opinion, these cases are indistinguishable from the case at hand and *support* my position, as well as the position of the *unanimous Allen* panel, that the affidavit failed to provide a substantial basis to believe that Defendant was engaged in the criminal activity alleged because the affidavit

*Finch* upheld the sufficiency of an affidavit to establish probable cause, against challenges both that the informant's reported observation of cocaine on the premises was speculative, since he couldn't "know" the substance was cocaine, and that the affidavit was merely conclusory. Rejecting these contentions, the court in *Finch* pointed out that, given the informant's stated experience and past reliability in drug cases, the informant could reasonably be assumed to be familiar with cocaine and able to identify it by observation,[1] and that an affidavit setting out the reasons for a belief, as opposed to merely stating a belief, is not conclusory.  998 F.2d at 352.  Such is the case here.

In *Weaver*, a panel of this court weighed the sufficiency of an affidavit used to obtain a warrant to search the residence of Gary Weaver for marijuana believed to be held there in quantity for distribution.  The CI, after providing an initial tip based on hearsay, was furnished with $100 and instructed to go to Weaver's house and make a buy.  He did so, informing the police of his purchase of a half-ounce of marijuana from Weaver, and of his belief (though without personal observation) that Weaver was growing marijuana at home. The resulting affidavit indicated that the CI, unnamed in the affidavit but named to the magistrate, was known to be reliable, having provided information about drug activity in the past, and that he had personally observed marijuana in Weaver's house.  (The affidavit did not mention the half-ounce drug sale, for which the police did not intend to charge Weaver.)  The officers who subsequently searched the house found a quarter-ounce of marijuana, for which Weaver was not prosecuted; nor was he prosecuted for the misdemeanor

---

[1] A contrary approach, taken by the Illinois courts, was used by the Supreme Court as an example of the folly to which rigid application of the "two-prong" test can lead.  *See Gates*, 462 U.S. at 235 n.9 (*citing People v. Palanza*, 55 Ill. App. 3d 1028, 371 N.E.2d 687 (Ill. App. 1978) (holding a warrant invalid because "[t]here is no indication as to how the informant or for that matter any other person could tell whether a white substance was cocaine and not some other substance such as sugar or salt.")).

sale to the CI. But the police also found several rifles, and Weaver, a convicted felon, was charged with unlawfully possessing them.

In finding the affidavit insufficient to establish probable cause for the warrant to issue, reversing the district court, the *Weaver* panel noted that the stated purpose of the search was to find evidence of suspected drug dealing; yet the affidavit itself had contained no information about the purchase the CI was supposed to have attempted, nor about the quantity of marijuana he observed, nor any other facts which would support a belief that drugs were being held in the house for sale. As this court observed of *Weaver* in another case, what was lacking in the *Weaver* affidavit was any indication of probable cause to suspect drug *trafficking*, the offense for which the warrant was expressly being sought. *See United States v. Smith*, 182 F.3d 473, 480 (6th Cir. 1999). But that was not in itself fatal, since an affidavit need only provide probable cause to believe a search will uncover evidence of some wrongdoing, without need for further specificity. *See United States v. Anderson*, 923 F.2d 450, 457 (6th Cir. 1991) (holding "that knowledge of the precise crime committed is not necessary to a finding of probable cause provided that probable cause exists showing that a crime was committed by the defendants"). What was finally fatal in the *Weaver* affidavit was its lack of probable cause to believe any marijuana previously observed by the CI would be left to be discovered by a search, for there was no mention of the quantity of drugs observed. Nor was there any attempt to note behavior indicating ongoing sales.

As *Weaver* pointed out, in an effort to keep secret the identity of a CI, the affidavit had been stripped of almost all particularity, and been reduced to "bare bones," with little added to the boilerplate language kept on file. In that situation, the panel held that other particularized facts, not identifying the CI, but obtained, for example, through police surveillance, should have been adduced to buttress the CI's information, if preserving his identity prevented the affidavit from going into further detail. *See Weaver*, 99 F.3d at 1378.

not enough without any meaningful follow up by the police. *Id.* at 55. In Judge Merritt's opinion, to hold otherwise "reduced the castle to a hovel where the state may presume that marijuana is grown" or other contraband is kept. *Id.* at 55. The same holds true in the case at hand. Contrary to the majority's holding today, the fact that the informant is known to the officer and has provided reliable information in the past does not *a fortiori* make the second factor irrelevant or end the inquiry.

Indeed, nowhere in *Gates* is there support for the majority's sweeping holding. Although it is true that the informant in *Gates* was anonymous, the pronouncements made therein regarding the relevant inquiry into whether the information received by an informant provides a substantial basis for determining probable cause were not limited to the case where the informant was anonymous. The Court easily could have held that the balancing of reliability and basis of knowledge under a totality of the circumstances is limited to those instances where the informant was unknown or had not provided reliable information in the past. However, the Supreme Court did no such thing. The only qualifier that was placed upon the instance where a "particular informant is known for the unusual reliability of his predictions of certain types of criminal activities in a locality" is that the informant's "failure . . . to thoroughly set forth the basis of his knowledge surely should not serve as an absolute bar to a finding of probable cause based on his tip." *Id.* at 233. The majority's holding that "[a]n affidavit based upon personal observation of criminal activity by a confidential informant who has been named to the magistrate and who, as the affiant avers, has provided reliable information to the police in the past about criminal activity, though without further specificity as to the type of such activity, can be sufficient for a magistrate to find probable cause to issue a warrant[,]" convolutes the pronouncement in *Gates*. In other words, the Supreme Court in *Gates* held that a tip lacking in detail or specificity from a known confidential informant should not prove an absolute bar to finding probable cause, because other indicia of reliability (the basis for knowledge) would be

requirement is not a factor to be assumed or a mere technicality; it is an express constitutional command. *See, e.g., Ybarra v. Illinois,* 444 U.S. 85, 92 (1979); *Lo-Ji Sales, Inc. v. New York,* 442 U.S. 319 (1979); *Marron v. United States,* 275 U.S. 192, 196 (1927). This affidavit lacked any indicia of basis of knowledge, and the magistrate simply ratified the bare bones assertions made in the affidavit when he issued this warrant, contrary to the Supreme Court's command under the Fourth Amendment. *See Gates*, 462 U.S. at 239. As stated, the fact that the informant was known and reliable is not enough, by itself, to provide a substantial basis to the issuing magistrate that Defendant was engaged in the criminal activity alleged. *See, e.g., United States v. McNatt,* 931 F.2d 251, 253 (4th Cir. 1991) (finding that the information provided by the known, reliable informant was sufficient to establish probable cause under *Gates* because the information was specific in nature and corroborated by the police).

In a case from this circuit where the converse was true – i.e., the affidavit while being rich in detail was from an anonymous tip in which minimal corroborative efforts were taken by the police – one panel member disagreed with the majority that the affidavit supported a finding of probable cause. *See United States v. Sonagere,* 30 F.3d 51, 55 (6th Cir. 1994) (Merritt, J., dissenting). Judge Merritt noted that "if detail is all that is needed to support a search warrant, the Fourth Amendment will no longer be any constraint or check on the issuance of search warrants. Any 'detailed' information, uncorroborated by the police, from virtually any unknown, unreliable source, would support issuance of a search warrant." *See id.* Judge Merritt disagreed with the majority that the specific nature of the tip was sufficient to compensate for the fact that the information source had never been used before and that the affidavit failed to provide any indication of the reliability of the source; however, he found it "[e]ven more troubling [that] the officers did nothing to corroborate any of the information or develop independent information that might supplement that of the information source." *Id.* at 54. The fact that the tip was rich in detail was

*Weaver*'s holding that the uncorroborated search warrant was defective is limited to the facts of that case. *Weaver* does not support the general propositions that a CI's information must always be independently corroborated by police, or that an affidavit must in every case set out and justify a CI's expertise in identifying the particularities of the criminal activity alleged, propositions we reject for the reasons that follow.

### III

In applying *Gates* to the circumstances before it, the *Allen* panel referred to the "totality of the circumstances" approach of that decision as a "test," and then applied this "test' in a two-factor analysis, indicating that a CI's information would gain significant weight when supported by (1) explicit and detailed description gleaned from first-hand observation, and (2) independent investigative corroboration. *Allen*, 168 F.3d at 298. No doubt this is so, but the question is whether these factors are requirements, both of which must be satisfied to comply with the Fourth Amendment's bar against unreasonable searches and seizures. *See* U.S. Const. amend. IV. As the Court observed in *Gates*, tests and prongs have an unfortunate tendency to develop a life of their own, and tend to draw more attention to their individual characteristics than to the totality of the circumstances. *See Gates*, 462 U.S. at 230 n.5 (criticising "[t]he entirely independent character that the *Spinelli* prongs have assumed"). That is what has happened here.

The majority of the panel that heard Allen's appeal to this court criticized the affidavit on four grounds. First, it is not specific as to the type or amount of cocaine observed in the residence to be searched. Second, facts bearing on the informant's familiarity with the appearance of cocaine are not provided. Third, especially in the light of the second objection, independent police corroboration is lacking. Fourth, the text was largely prefabricated boilerplate, supposedly encouraging the lack of specificity already complained of. *See Allen*, 168 F.3d at 302.

These complaints do not call for individual rebuttal. The affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added. It is the totality of the circumstances that persuade us that the affidavit in the instant case was, in fact, not merely "conclusory and 'bare bones'" in nature but sufficient. The panel wrote: "the affidavit failed to provide any facts about the informant's knowledge or familiarity with the appearance of cocaine. Instead, the affidavit merely stated that the tips of 'criminal activity' provided by the informant in the past have 'proven to be reliable.'" *Ibid.* But in fact, the affidavit states under oath that the affiant, Detective Lomenick, has known the CI for five years, that Lomenick has been assigned to the Narcotics Division for fifteen years, and that "said informant has given me [Lomenick] information about individuals involved in criminal activity in the past that has proven to be reliable." *Id.* at 296. It is obvious on the face of the affidavit that such information in the past most likely concerned narcotics. Affidavits are not required to use magic words, nor does what is obvious in context need to be spelled out; if a CI saw guns, he is not required to explain how he knew what a gun looks like. Nor is an affidavit required to present proof that would without question withstand rigorous cross-examination. Clearly, this CI's past experience with the drug trade was reflected anew in the circumstances of this case. Taken as a whole, the affidavit provided sufficient facts from which the magistrate could draw an independent conclusion as to the probability (certainty is *not* required) of what it alleged a search would disclose. There was nothing arbitrary about a conclusion that, in this case, probable cause existed.

Since *Gates*, affidavits have been found insufficient for various deficiencies, none of them exhibited here. For example, a merely conclusory statement of the affiant's belief in an informant's past credibility, unsupported by further detail, failed to pass muster in the Seventh Circuit. *See United States v. Reddrick*, 90 F.3d 1276, 1280 (7th Cir. 1996). That result complies with *Gates*'s requirement that the information presented to the magistrate in the affidavit be

drugs without compromising their case or a potential conviction. Here, any indicia of corroboration by Lomenick such as minimal surveillance of Defendant's residence to determine a pattern of drug activity, or simply asking for more details from the informant would have assisted in providing the magistrate a more particularized basis for determining probable cause. However, Lomenick failed to so much as provide a statement that he had dealt with this informant in relation to Lomenick's duties as a narcotics officer, or that this informant had provided information which had led to narcotics convictions in the past.

The majority engages in speculation or conjecture in order to supply the requisite indicia of reliability to this affidavit when it assumes, without more, that Lomenick's dealing with the informant involved narcotics. ("It is obvious on the face of the affidavit that such information in the past most likely concerned narcotics.") The majority bases this *assumption* on the fact that Lomenick has worked in the narcotics division for fifteen years and has known the confidential informant for five years – not because of any information derived from the affidavit itself. It is well known that criminal activity associated with illegal narcotics also includes a bevy of other criminality such as prostitution, gambling, illegal firearms, burglary, and various other illegal means to finance drug operations and use. As such, without more specificity concerning the type of information this informant had provided in the past, it is impossible to determine "on the face of the affidavit" whether Lomenick's past dealings with this informant directly involved illegal narcotics transactions, or whether his dealings with this informant dealt with other types of criminal activity.

*Gates* commands a reviewing court to weigh and balance the evidence presented before it; *Gates* does not command -- and indeed could not legally command under the Fourth Amendment -- that a reviewing court compensate for deficiencies in the affidavit by engaging in speculation or conjecture. *See* U.S. CONST. amend. IV; *Gates*, 462 U.S. at 230-31. Contrary to the majority's assertion, the specificity

had provided reliable information regarding *narcotics* in the past; it failed to provide any information as to where the cocaine was being stored or sold; and it failed to indicate the amount of cocaine that was allegedly seen or any basis as to why the informant had reason to believe that the substance which he allegedly observed was cocaine. As such, the affidavit failed to provide a substantial basis that cocaine would likely be found in Defendant's possession on the premises some seventy-two hours later. *See United States v. McKinney*, 143 F.3d 325, 328 (7th Cir. 1998) (noting that "[a] search warrant should not issue except on probable cause that evidence of a crime is *currently* located at a *particular* place" (emphasis added)).

Moreover, the affidavit failed to indicate any corroborating efforts by the police which, as stated by the *Allen* panel, may have changed the outcome here.[3] The majority's concern for detectives conducting surveillance in crack-ridden neighborhoods or for investigative measures adding additional time for the "highly mobile" drug operations to relocate, are unfounded and completely unsupported by the record. Drug interdiction officers such as Lomenick are trained to carry out such tasks as surveying suspected residences in crack-ridden neighborhoods, and determining the pattern of activity of those suspected of dealing in illegal

---

[3]The majority seems to imply that the *Allen* panel argued that police investigation and corroboration are necessary in every case in order for a warrant to issue; however, the *Allen* panel made no such argument and I make no such averment here. Rather, as stated in *Gates*, police corroboration becomes valuable and particularly significant when the tip provided by the informant lacks detail and specificity sufficient to comply with the particularity requirement of the Fourth Amendment. *See Gates*, 462 U.S. at 243-44. In fact, the *Allen* panel began its analysis by stating that "[t]his case asks us to decide whether the affidavit presented to Special Judge McColpin set forth sufficient particularized facts for the judge to find a substantial basis for probable cause to issue the search warrant . . . ." *See United States v. Allen*, 168 F.3d at 297. It is the lack of specificity of the informant's tip coupled with the lack of any corroboration by the police that should have been fatal to the affidavit here, as the *Allen* panel found.

sufficient to allow "that official" to assess probable cause independently, and not merely to rubber-stamp the affiant's conclusion. *See Gates*, 462 U.S. at 239.

This court has upheld a district court's finding that no probable cause existed when a warrant was issued based on an affidavit whose information came from an anonymous tip sparse in detail and wholly uncorroborated by the police. *See United States v. Leake*, 998 F.2d 1359, 1365 (6th Cir. 1993). The Eighth Circuit also found no probable cause provided by an affidavit also based on an anonymous tip, albeit one rich in particulars, where police investigation corroborated only innocent details and found nothing suspicious. *See United States v. Gibson*, 928 F.2d 250, 253 (8th Cir. 1991). The Ninth Circuit invalidated a warrant under very similar circumstances. *See United States v. Mendonsa*, 989 F.2d 366, 369 (9th Cir. 1993). These cases rightly insisted upon substantial independent police corroboration, because of the absence of any indicia of the informants' reliability. *Gates* had turned on precisely such a question, and emphasized the need for corroboration in those circumstances. *See* 462 U.S. at 244.

That is not a factor here. The CI was not anonymous, but personally known to the detective who swore the affidavit, and who revealed the CI's name to the magistrate. The CI's reliability in criminal matters in which the detective was involved had extended over a five-year period. The information alleged was of direct personal observation of criminal activity. Corroboration is not a necessity in such a case. A requirement that information from such a CI should invariably have to be personally corroborated by further police investigation would aid lawbreakers, as detectives tried to conduct surveillance in crack-ridden neighborhoods without themselves being detected and their suspects alerted. Moreover, the additional time thus added to the process by mandating an independent police investigation following a CI's contact would provide a further advantage to drug dealers' already highly mobile, hit-and-run operations. We decline to handicap the state in that way.

Nevertheless, a caveat is in order. Police should be aware that failure to corroborate all that can easily be corroborated incurs two dangers. The first is to risk that a warrant will not issue where it should. The second is to risk the loss, at trial or on appeal, of what has been gained with effort in the field. But while better investigative work is preferable to merely adequate investigation, it is not the constitutional measure of probable cause.

At bottom, we return to the basics of the Fourth Amendment: is there "probable cause" to believe that evidence of a crime will be found in the search? We hold that where a known person, named to the magistrate, to whose reliability an officer attests with some detail, states that he has seen a particular crime and particular evidence, in the recent past, a neutral and detached magistrate *may* believe that evidence of a crime will be found. There is, of course, no *guarantee* that the evidence will still be there, but the magistrate may determine that such a probability exists. This holding requires evidence sufficient to provide a basis for that judgment. It cannot properly be characterized, in the dissent's terms, as "driv[ing] a stake through the very heart of the Fourth Amendment" or "mak[ing] a mockery of the Fourth Amendment's warrant requirement." Such a description cannot be used "in the extreme acceptance of th[os]e word[s] without some risk of terminological inexactitude," to employ Churchill's phrase. *See* 1 Winston S. Churchill, *His Complete Speeches 1897-1963* 562 (Robert Rhodes James, ed.).

## IV

For the foregoing reasons the judgment of the district court is **AFFIRMED**.

Said differently, the affidavits submitted in *Aguilar* and *Nathanson* were insufficient to allow the issuing magistrate to determine probable cause because they lacked reliable information; the magistrate's determination otherwise would have improperly been "a mere ratification of the bare conclusions of others." *Gates*, 462 U.S. at 239. Although the information may have been attested to as being "reliable," it lacked any indicia of specificity or corroboration. Indeed, the *Aguilar* Court found that had the police made some efforts at corroborating the "reliable" informant's tip, "an entirely different case" would have been presented. *See Aguilar*, 378 U.S. at 109 n.1.

The value of corroborative police efforts was also emphasized in *Gates*. Specifically, the Court found two factors significant in allowing a reviewing court to assess whether an informant's tip provides a substantial basis to constitute probable cause. First, an "explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles [the informant's] tip to greater weight that might otherwise be the case." *Gates,* 462 U.S. at 234. Second, the extent to which the tip is corroborated by the police officer's own investigation is significant. *Id.* at 244.

Despite these clear directives from the Court that both the reliability as well as the basis of knowledge of the information must be considered in light of the totality of the circumstances to insure that a warrant does not issue based upon the bare bones conclusions of others, the majority today holds that a warrant may issue based upon the averment made by a reliable informant, regardless of the lack of specificity or independent corroboration. The warrant at issue simply averred that 1) the affiant had known the informant for five years and that the informant had provided information in the past that had proven to be reliable; 2) that the informant's name was provided to the magistrate; and 3) that informant had seen Defendant in possession of cocaine at Defendant's home approximately seventy-two hours prior to informing the affiant. The affidavit lacked any indication that this informant

In fact, the *Gates* Court provided examples of cases which "illustrate[d] the limits beyond which a magistrate may not venture in issuing a warrant." 462 U.S. at 239. Included in these examples were those instances when the warrant was based upon a "wholly conclusory statement" which provided the magistrate with no basis at all for making an informed judgment. One such example was in the case of *Aguilar* where an officer's statement that "[a]ffiants have received reliable information from a credible person and do believe that heroin" is stored in the home, was found to be insufficient to provide the magistrate with probable cause to issue the warrant. *See Id.* (quoting *Aguilar,* 378 U.S. at 109). Likewise, in *Nathanson v. United States*, the Supreme Court found that the affiant's sworn statement that "'he has cause to suspect and does believe that' liquor illegally brought into the United States is located on certain premises" was not sufficient because it was merely a wholly conclusory statement which failed to provide the magistrate with a substantial basis upon which to issue the warrant. *See* 462 U.S. at 239 (quoting *Nathanson*, 290 U.S. 41, 44 (1933)).

---

the officer attest "with some detail" as to the informant's reliability. Instead, the magistrate was simply provided with a general assertion made by an informant, whom Lomenick had known for five years and who had provided information regarding "criminal activity" in the past, that Defendant was in possession of "legend and/ or narcotic drugs including Cocaine" on his premises. As discussed more fully *infra* in this dissent, this generalized assertion fails to pass constitutional muster under the Fourth Amendment – and indeed fails even under the majority's holding as expressed in Section III – because it lacks specificity and particularity as to the quantity or location of the illegal drugs, or as to why this informant had a basis of knowledge for making his assertion, especially where Lomenick did nothing to corroborate the tip. Furthermore, I find it of no consequence that a magistrate is provided with the name of the informant, particularly in this case where there is nothing in the record to suggest that the informant's name was of any meaning to the magistrate -- i.e., the name had no bearing in establishing a substantial basis to believe that criminal activity was afoot (probable cause). To borrow from Shakespeare, "What's in a name! that which we call [an informant] By any other name would smell as [unreliable.]" *See* WILLIAM SHAKESPEARE THE COMPLETE WORKS, ROMEO AND JULIET act 2, sc. 1, 254 (Dorset Press 1988).

---

---

## CONCURRENCE

---

RONALD LEE GILMAN, Circuit Judge, concurring in the judgment. Although I agree with the majority's ultimate conclusion that the district court did not err in denying Allen's motion to suppress, I write separately because my reasoning is not based on the validity of the warrant itself, but rather on the good faith exception to the warrant requirement as established by *United States v. Leon*, 468 U.S. 897 (1984).

I agree with the dissent's position that the warrant in this case was deficient, but do not share its somewhat apocalyptic sentiments. The key language of the underlying affidavit simply stated that "[defendant] . . . unlawfully has in his possession on said premises legend and/or narcotic drugs including Cocaine" and that the informant "while there saw Cocaine in possession of the said [defendant] . . . ." No information was provided as to quantity, storing, or selling. Based on the information provided, the informant may have observed nothing more than Allen possessing one or two rocks of crack cocaine, which could have been quickly consumed. Thus, in the absence of greater specificity, the special judge who issued the warrant in this case could not have had a substantial basis for concluding that a search of Allen's residence would uncover any illegal drugs. *See Illinois v. Gates*, 462 U.S. 213, 230-31 (1983) (adopting the "totality of the circumstances" test as the controlling standard in determining probable cause for search warrants).

I therefore agree with the dissent's conclusion that there was an absence of probable cause to support the issuance of the search warrant in question. *See Zurcher v. The Stanford Daily*, 436 U.S. 547, 556-57 n.6 (1978) (quoting with approval the following statement: "Search warrants may be issued only by a neutral and detached judicial officer, upon a showing of probable cause—that is, reasonable grounds to believe—that criminally related objects are in the place which

the warrant authorizes to be searched, *at the time when the search is authorized to be conducted.*") (emphasis added); *United States v. McKinney*, 143 F.3d 325, 328 (7th Cir. 1998) ("A search warrant should not issue except on probable cause that evidence of a crime is currently located at a particular place."); *United States v. Finch*, 998 F.2d 349, 352 (6th Cir. 1993) ("Probable cause for the issuance of a search warrant is defined in terms of whether the affidavit sets out facts and circumstances which indicate a fair probability that evidence of a crime *will be located on the premises of the proposed search.*") (citation and internal quotation marks omitted) (emphasis added).

Despite these deficiencies, however, I believe that Detective Lomenick "acted in objective good faith" when he relied on the warrant. *Leon*, 468 U.S. at 908. In *Leon*, the Supreme Court held that the exclusionary rule does not "bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *Id.* at 905. The proper test of an officer's good faith is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* at 922 n.23. Here, Lomenick presented a neutral judicial officer with an affidavit stating that he had information about the presence of illegal drugs at a specific location from a reliable informant that was based on recent, personal observation.

After examining the warrant under the microscope of close legal analysis, I agree with the dissent's conclusion that the underlying affidavit lacked sufficient specificity to pass constitutional muster. I cannot further conclude, however, that the affidavit at issue was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (citations and internal quotation marks omitted); *see also United States v. Cardall*, 773 F.2d 1128, 1133 (10th Cir. 1985) ("Courts cannot make the good faith of an officer turn upon whether his reliance on a warrant was misplaced. It is only when the

basis of knowledge of the tip. Although it is true that a deficiency in one of the prongs may be compensated by the strength of the other prong, it is equally as true that both the "reliability" as well as the "basis of knowledge" prongs should nonetheless be considered. *See Gates,* 462 U.S. at 238-39. The majority's relaxed standard for finding probable cause is not supported by *Gates* and indeed fails to heed the Supreme Court's mandate that "courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued" in order to insure that a magistrate does not abdicate his duty by issuing warrants based upon the "bare bones" conclusions of others.[2] *Id.* at 239.

---

[2] The majority's holding as articulated in the last paragraph of Section III of the opinion does not change my position. I specifically note the dichotomy between the holding set forth by the majority in the first paragraph of the opinion, and its holding – rephrased in response to this dissent – set forth in Section III. Which is to say, the majority retreats somewhat from its holding as set forth at the outset of the opinion in an apparent attempt to compensate for its failure to account for the particularity requirement of the Fourth Amendment.

Juxtaposing the phraseology of the holdings is helpful to illustrate my point. In the first paragraph of the opinion, the majority holds that "an affidavit based upon personal observation of criminal activity by a confidential informant who has been named to the magistrate and who, as the affidavit avers, has provided reliable information to the police in the past about criminal activity, though without further specificity as to the type of such activity, can be sufficient for a magistrate to find probable cause to issue a warrant." In the last paragraph of Section III, the majority attempts to strengthen the probable cause standard set forth in its holding, when it states that "[w]e hold that where a known person, named to the magistrate, to whose reliability an officer attests with some detail, states that he has seen a particular crime and particular evidence, in the recent past, a neutral and detached magistrate *may* believe that evidence of a crime will be found." Simply by adding the words "particular" and "detail" to its holding as couched in Section III, does not thereby render the majority's reasoning and result compatible with *Gates* or constitutional under the Fourth Amendment. Even when its additional rhetoric is taken into account, the majority's position is no stronger at the end of Section III than it was at the outset of its opinion.

In fact, the majority's holding as articulated in Section III only serves to undermine its conclusion that the warrant in this case was supported by probable cause. The magistrate in this case was *not* provided with a basis of knowledge of "a *particular* crime" and "*particular* evidence," nor did

balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip, the "two-pronged test" has encouraged an excessively technical dissection of informants' tips with undue attention being focused on isolated issues that cannot sensibly be divorced from the other facts presented to the magistrate.

*Id.* at 233-34 (citations and footnotes omitted; emphasis added).

In short, the Court in *Gates* abandoned the rigid "two-prong" test and in its place, reaffirmed the traditional totality of the circumstances approach, holding that the elements of the two prong test are relevant factors to be balanced in light of all of the information provided:

The task of the reviewing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.

*Id.* at 238-39 (citations omitted).

## II.

The flaw in the majority's holding in the case at hand lies in its failure to comply with *Gates*' command to consider the totality of the circumstances; instead, the majority relaxes the probable cause requirement to a degree unsupported by *Gates,* and allows for a warrant to issue based simply upon the averment that the informant "has provided reliable information in the past about criminal activity . . . without the further specificity as to the type of such activity . . . ." In other words, the majority's holding fails to account for the

reliance was *wholly unwarranted* that good faith is absent.") (emphasis added).

The dissent contends that, were my view to be adopted, "any officer could obtain a warrant on the bare, generalized assertions of an informant secure in the knowledge that even if the warrant was held invalid for a lack of probable cause, the search would be saved by nothing more than the officer's *alleged* 'good faith.'" I find this contention to be without merit. As the Supreme Court in *Leon* emphasized, "the standard of reasonableness . . . is an *objective* one." *Id.* at 919 n.20 (emphasis added). Thus, the determination of whether the good faith exception applies in a particular case does not depend on the subjective beliefs of the officers involved. *See United States v. Maggitt*, 778 F.2d 1029, 1035 n.3 (5th Cir. 1985) ("Because the *Leon* standard is objective, the testimony of the agent who prepared the affidavit . . . is not particularly relevant."); *United States v. Gant*, 759 F.2d 484, 487-88 (5th Cir. 1985) ("[T]he determination of good faith will ordinarily depend on an examination of the affidavit by the reviewing court.").

Furthermore, the warrant was applied for and issued prior to this court's decision in *United States v. Weaver*, 99 F.3d 1372 (6th Cir. 1998), in which a panel of this court held that the search warrant in question was defective primarily because the officer's affidavit did not provide any "underlying factual circumstances to support the informant's knowledge regarding distribution, nor the detective's own 'belief' that . . . quantities of marijuana were present 'for the purpose or with the intention of unlawful possession, sale or transportation,' or even that marijuana would be on the premises when the warrant was executed." *Id.* at 1378. Because the *Weaver* decision—with its clear mandate that the underlying affidavit must include specific information concerning the quantity, storing, or selling of illegal drugs—was handed down *after* the judicial officer in this case issued the warrant, it was all the more reasonable for an officer such as Lomenick to have formed an objective good faith belief that the information supplied by the informant was

sufficient under the authority of *United States v. Pelham*, 801 F.2d 875 (6th Cir. 1986), and *United States v. Finch*, 998 F.2d 349 (6th Cir. 1993).

The dissent characterizes this fact as having "little consequence" because "*Weaver* simply interpreted *Leon* and applied it to the facts before it; *Weaver* certainly did not—and in fact could not—change the exceptions to the good faith provision as articulated by the Supreme Court." These arguments, however, do not diminish my point that an officer should not be expected to predict that warrant practices similar to what the courts have found acceptable in the past will subsequently fail to withstand the analysis of evolving legal decisions.

Although not dispositive, it is also telling that the question of whether the warrant in this case was defective has generated significant debate among the judges of this court. *See Leon*, 468 U.S. at 926 ("The affidavit . . . provided evidence sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause."); *United States v. Taxacher*, 902 F.2d 867, 872 (11th Cir. 1990) (noting that the Supreme Court's observation in *Leon*—that reasonable jurists had disagreed on the issue—was "intended to bolster the Court's holding that the officer had acted reasonably under the circumstances").

In sum, I conclude that even though the affidavit in this case did not provide enough detail to establish probable cause, it was sufficient to fit within the "good faith" exception of *Leon*. The dissent apparently believes that Lomenick's actions amount to "flagrant misconduct" (*United States v. Hove*, 848 F.2d 137, 141 (9th Cir. 1988)) and therefore the "extreme sanction" (*Leon*, 468 U.S. at 916, 926) of exclusion should be imposed. Because I disagree, I would affirm the denial of Allen's motion to suppress, albeit for reasons other than those set forth by the majority.

"reliability" and "basis of knowledge" of the informant –] independent status. Instead, they are better understood as relevant considerations in the totality of circumstances analysis that traditionally has guided probable cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.

*Id.* at 232-33   (citations, footnotes, and internal quotation marks omitted).

By way of example, the Court then emphasized the balancing approach not only of the informants' "veracity" or "reliability" and "basis of knowledge," but the totality of the circumstances in general. *Gates,* 462 U.S. at 233. In doing so, the Court expressly provided a hypothetical scenario of what the majority holds today as being decisively sufficient regarding the informant and the information he or she has so provided, as well as other scenarios, noting that each scenario should be assessed under the totality of the circumstances to determine whether the information provided established probable cause.

*If, for example, a particular informant is known for the unusual reliability of his predictions of certain types of criminal activities in a locality, his failure, in a particular case, to thoroughly set forth the basis of his knowledge surely should not serve as an absolute bar to a finding of probable cause based on his tip.* Likewise, if an unquestionably honest citizen comes forward with a report of criminal activity – which if fabricated would subject him to criminal liability – we have found rigorous scrutiny of the basis of knowledge unnecessary. Conversely, even if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight than might otherwise be the case. Unlike a totality of circumstances analysis, which permits a

knowledge" – are all highly relevant. However, the Court went on to opine that these elements should not "be understood as entirely separate and independent requirements to be rigidly exacted in every case [as they had been applied by lower courts]. Rather, . . . they should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a certain place." *See Gates,* 462 U.S. at 230.

The Court found this "totality of the circumstances approach . . . far more consistent with prior treatment of probable cause than . . . any rigid demand that specific 'tests' be satisfied by every informant's tip." *Gates,* 462 U.S. 230-31. Moreover, the Court reasoned that the less rigid approach was in concert with the dynamic nature of probable cause as being a "'practical, nontechnical conception.'" *Id.* at 231 (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949)). The Court embraced its earlier teachings regarding probable cause as dealing in "probabilities." *Id.* These probabilities "'are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Id.* (quoting *Brinegar*, 338 U.S. at 175). The Court further opined as follows:

> [P]robable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules. Informant's tips doubtless come in many shapes and sizes from many different types of persons. . . . Informants' tips, like all other clues and evidence coming to a policeman on the scene may vary greatly in their value and reliability. Rigid legal rules are ill-suited to an area of such diversity. One simple rule will not cover every situation.

\* \* \*

There are persuasive arguments against according [the elements of the "two-pronged test" – "veracity" or

---

**DISSENT**

---

CLAY, Circuit Judge, dissenting. Because I believe that the majority's holding relaxes the standard upon which a warrant may issue to a point unsupported by Fourth Amendment jurisprudence, and indeed unsupported by the letter and spirit of the Fourth Amendment itself, I respectfully dissent. As a result of today's holding, any tip provided by an informant who has provided reliable information to the police in the past is sufficient to constitute probable cause for the warrant to issue, irrespective of the bare, generalized nature of the information provided and without any corroboration by the police. This result strips away the protection that is afforded to all citizens -- both innocent and guilty alike -- to be free from legally unsupportable and hence unreasonable searches and seizures, and is at variance with the meaning of probable cause as envisioned by the drafters of the Amendment.

Although I disagree with the majority's decision to affirm the district court's order denying Defendant's motion to suppress the evidence, I am most troubled by the far reaching effects of the majority's opinion which drive a stake through the very heart of the Fourth Amendment. It is for this reason that while I address the matter at hand, I pay particular attention to the devastating impact that this decision has on Fourth Amendment jurisprudence in this circuit as a whole.

**I.**

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.  It was argued when the Constitution and Bill of Rights were being adopted that a provision providing against searches and seizures unsupported by evidence of wrongdoing was needed to prevent general warrants from issuing:

> [G]eneral warrants, by which an officer may search suspected places, without evidence of the commission of a fact, or seize any person without evidence of his crime, ought to be prohibited.  As these are admitted, any man may be seized, any property may be taken, in the most arbitrary manner, without evidence or reason.  Every thing most sacred may be searched and ransacked by the strong hand of power.

*See* 3 JONATHAN ELLIOT, THE DEBATES OF THE SEVERAL STATE CONVENTIONS, ON THE ADOPTION OF THE FEDERAL CONSTITUTION 588 (2d ed. J.B. Lippincott Comp. 1831) (comments of Patrick Henry).  Hence, the requirement that a warrant be supported by specific evidence of criminal activity before being issued is deeply rooted in our history.  Moreover, the Framers of the Bill of Rights carefully sought to define the precise conditions under which government agents could search private property so that citizens would not be at the mercy of those agents for the protection of their privacy.  As such, the express language of the Fourth Amendment must be heeded, and the particularized nature of the oath or affirmation made in support of the warrant as required by the Amendment cannot be considered a mere technicality.

The quantum of evidence or information required to support the issuance of a warrant – i.e., the requirements of the particularized inquiry to establish probable cause – has long been debated in the courts, especially when the warrant is based upon hearsay information from an informant.  The jurisprudential evolution concerning the requirements for the issuance of warrants reached its peak in the seminal case of *Illinois v. Gates,* 462 U.S. 213 (1983).  The cases from our circuit applying the standards set forth in *Gates* span a wide range of holdings which the majority claims has given rise to

confusion as to the appropriate standards for determining probable cause as well as their proper application.  However, I disagree that the various holdings have led to confusion as to the proper standards or their application.  Any arguable inconsistencies in cases from this circuit are not the result of confusion as to the standards or their application in probable cause analysis, but rather a function of the fluid nature of probable cause.[1]  *See id.* at 231.  With that said, I focus upon the *Gates* decision itself in this dissent because it provides the benchmark for probable cause analysis.  As will be illustrated, the majority opinion is at odds with the Supreme Court's mandates regarding a reviewing court's determination of whether a warrant is supported by probable cause, and therefore sets a dangerous and unfounded precedent in this circuit.

In *Gates*, the Supreme Court examined its earlier decisions in *Aguilar v. Texas,* 378 U.S. 108 (1964) and *Spinelli v. United States,* 393 U.S. 410 (1969) and rejected the strict interpretation that had been given these decisions by reviewing courts.  Specifically, the Court acknowledged that the elements of the "two pronged test" established in these decisions regarding the value that should be afforded to an informant's tip – "veracity" or "reliability" and "basis of

---

[1]Cases from this circuit may indeed be looked to for guidance nonetheless.  The *Allen* panel considered the cases of *United States v. Pelham,* 801 F.2d 875 (1986), *United States v. Finch,* 998 F.2d 349 (1993), and *United States v. Weaver*, 99 F.3d 1372 (1996) for guidance.  However, the *Allen* panel also found that any apparent inconsistencies between these decisions were due to the nature of probable cause and the fact that various factors must be weighed and balanced when determining whether sufficient evidence was presented by the affiant in order to provide a substantial basis for determining whether criminal activity was afoot.  *See United States v. Allen,* 168 F.3d 293, 299 (6th Cir.), *rehearing en banc granted, judgment vacated by United States v. Allen,* 179 F.3d 1002 (6th Cir. 1999).  It is this very weighing and balancing of factors that the majority opinion now finds unnecessary, contrary to Supreme Court precedent.  As a result, the majority's opinion does not "clarify the law in this circuit" as it claims to do in response to the invitation extended by the *Allen* panel's dissent; instead, the majority's opinion derogates the law as dictated by the Supreme Court.