**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jerry FORD, Defendant–Appellant.**

**No. 92–5181.**

United States Court of Appeals,
Eleventh Circuit.

Sept. 21, 1994.

John R. Howes, P.A., Ft. Lauderdale, FL,
for appellant.

Linda Collins Hertz, Anne M. Hayes, Asst.
U.S. Attys., Miami, FL, and William Michael,
Jr., Asst. U.S. Atty., Ft. Pierce, FL, for
appellee.

Before KRAVITCH and BIRCH, Circuit Judges, and HOEVELER *, Senior District Judge.

BIRCH, Circuit Judge:

In this appeal, we decide for the first time in this circuit whether surveillance of a mobile home using a thermal imager constitutes a search under the Fourth Amendment. Because appellant exhibited neither a subjective nor an objective expectation of privacy in heat vented from his mobile home, we find that the thermal imagery did not constitute an impermissible search. We AFFIRM.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In May, 1991, agents of the Florida Department of Law Enforcement (FDLE) used a thermal imager to scan a mobile home in Venus, Florida. Appellant Jerry Lee Ford owned the mobile home, which was located on land leased by Ford and his codefendant, Dorothy Ford Longmire. Acting upon information that Ford and Longmire were growing marijuana inside the mobile home, FDLE agents and other law enforcement officers covertly approached the structure late at night. The officers entered over a locked gate and traveled a quarter of a mile onto the leased property. They established surveillance in thick foliage approximately thirty-five to forty-five yards from the mobile home.

An FDLE agent viewed the mobile home through a thermal imager, a passive, non-intrusive device that measures heat in the infrared range. A thermal imager detects minute differences in temperature on the surface of objects and displays that information visually. The agent determined that the mobile home was emitting an inordinate amount of heat through its floor and walls; this finding was consistent with other indoor growing operations, which generate excess heat because of their use of artificial lights. Based upon information gained from the thermal imager and from other sources, the FDLE obtained a search warrant for the mobile home.

When the FDLE executed the search warrant, they discovered a sophisticated hydroponic laboratory and over four hundred marijuana plants. To prevent outsiders from observing this operation, Ford had boarded the mobile home's windows behind curtains. Ford had also punched holes in the floor of the mobile home and installed a blower to vent the excess heat generated by the artificial lights. Both Ford and Longmire were arrested and charged in a two-count indictment for conspiracy to possess marijuana with intent to distribute, in violation of 21 U.S.C. § 846, and for possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1).

Prior to trial, Ford moved to suppress evidence seized from the mobile home. He argued that the FDLE lacked probable cause to support the search warrant. Additionally, he challenged the FDLE's warrantless use of a thermal imager, arguing that such a scan constituted an impermissible search under the Fourth Amendment.

The suppression motion was referred to a magistrate judge, who recommended that the district court deny the motion because Ford had failed to establish standing to object to the search. Alternatively, the magistrate judge rejected the merits of Ford's suppression motion, finding that the search warrant was supported by probable cause. Further, the magistrate judge concluded that thermal imagery did not constitute a search violative of the Fourth Amendment because Ford did not have a reasonable expectation of privacy in heat escaping from his mobile home. The district court adopted the magistrate's report and recommendation and denied Ford's suppression motion.

After the jury had been sworn, Ford renewed his motion to suppress.[1] In addition

---

* Honorable William M. Hoeveler, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

1. Before *voir dire,* Ford's attorney renewed the original suppression motion and made a standing objection to the introduction of evidence resulting from the search. He also renewed the amended motion at the close of the government's case. For the purposes of our analysis, it is Ford's second attempt to renew his suppression motion which is the most significant of his three attempts.

to challenging the FDLE's warrantless use of a thermal imager, Ford argued that the affidavit supporting the search warrant relied upon stale information. Ford also claimed that the FDLE's act of trespass onto Ford's leasehold itself constituted a warrantless search. Ford explained that he had not introduced these two grounds earlier because they were based on discovery materials that the defense had received the previous night. The district court denied the renewed motion to suppress without comment. Ford was convicted for possession of marijuana with intent to distribute.

## II. DISCUSSION

■ Ford challenges the district court's denial of his suppression motions on three grounds. He contends (1) that the FDLE agents conducted a warrantless search by invading the curtilage of his mobile home, (2) that the use of the thermal imager was a warrantless search, and (3) that the area around his mobile home was part of his commercial curtilage, should the court find that the structure was not a residence. Because Ford did not raise his curtilage claims in his pretrial suppression motion, only the issue of whether the thermal imagery constituted a warrantless search was preserved for appeal.[2]

■ Whether the district court erred in denying Ford's suppression motion is a mixed question of law and fact. We review the district court's factual findings for clear error, and we review *de novo* the district court's application of law to those facts. *United States v. McKinnon*, 985 F.2d 525,

527 (11th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 130, 126 L.Ed.2d 94 (1993).

### A. *Standing to Object*

Whether Ford has standing to object to the search is the threshold issue in this case. The government contends, and the district court held, that Ford failed to establish his standing in an affidavit or a signed statement of facts supporting his motion to suppress as required by Local Rule 10 H for the Southern District of Florida. Local Rule 10 H provides that "[a]ll motions in criminal cases which require evidentiary support shall be accompanied by a memorandum of law and a signed statement of the facts relied upon for the motion." S.D.Fla. Local R. 10 H. We have held that "a motion to suppress must in every critical respect, including allegations of standing, be 'sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that a substantial claim is presented.'" *United States v. Eyster,* 948 F.2d 1196, 1208–09 (11th Cir.1991) (quoting *United States v. Richardson,* 764 F.2d 1514, 1527 (11th Cir.), *cert. denied,* 474 U.S. 952, 106 S.Ct. 320, 88 L.Ed.2d 303 (1985)).

■ Although Ford did not append a separate signed statement of facts to his suppression motion, the motion itself refers to the searched premises as "Defendant's mobile home" and as "a private home." R1–52. In addition, Ford's memorandum of law supporting his suppression motion states that Ford leased the property where the mobile home was located. R1–50. Both the motion and the supporting memorandum were signed by Ford's attorney. Because Ford submitted signed documents alleging both ownership of the mobile home and a lease-

---

2. A party's failure to present a suppression motion prior to trial constitutes waiver unless the district court grants relief for good cause shown, Fed.R.Crim.P. 12(f); *United States v. Richardson,* 764 F.2d 1514, 1527 (11th Cir.), *cert. denied,* 474 U.S. 952, 106 S.Ct. 320, 88 L.Ed.2d 303 (1985); *see* Fed.R.Crim.P. 12(b)(3); *United States v. Milian–Rodriguez,* 828 F.2d 679, 683 (11th Cir.1987), *cert. denied,* 486 U.S. 1054, 108 S.Ct. 2820, 100 L.Ed.2d 921 (1988). In his initial, pretrial suppression motion, Ford alleged only that the FDLE lacked probable cause to support the search warrant and that the warrantless use of a thermal imager was an illegal search. This motion did not argue that the FDLE had invaded his

residential or commercial curtilage, nor did it allege facts sufficient to support such a claim. Ford argued these curtilage claims for the first time in court, after the jury had been sworn. Had the district court entertained Ford's curtilage arguments at that time, after jeopardy had attached, the government would have lost its right to appeal an adverse ruling on suppression. *United States v. Taylor,* 792 F.2d 1019, 1025 (11th Cir.1986), *cert. denied,* 481 U.S. 1030, 107 S.Ct. 1957, 95 L.Ed.2d 530 (1987). Therefore, we hold that Ford was untimely in raising his residential and commercial curtilage claims and thus failed to preserve those issues for appeal.

hold in the underlying property, we find that he satisfied Local Rule 10 H. *Cf. Eyster*, 948 F.2d at 1209 (holding that appellant's suppression motion, with the government's acknowledgement that the appellant owned the searched residence and the appellant's testimony that he was a sublessee of the residence at the time of the search, adequately alleged standing); *Richardson*, 764 F.2d at 1527 ("In short, the motion must allege facts which, *if proven, would provide a basis for relief*.").

■ Moreover, the facts established at trial confirm Ford's standing. The district court did not accord a hearing on the suppression motion because it determined that Ford had not established a *prima facie* case for suppression. Nevertheless, government witnesses testified at trial that Ford had a leasehold in the property at the time of the search. Consequently, we find that Ford had standing to object to the search. *See United States v. Garcia*, 741 F.2d 363, 366 (11th Cir.1984) (holding that owners, lessees, and occupants demonstrating significant and current interest in the searched premises have an expectation of privacy).

## B. *Thermal Imagery Search*

Whether the FDLE's use of a thermal imager constituted an unreasonable search under the Fourth Amendment is a first-impression issue in our circuit.[3] The touchstone for this decision is whether the alleged search violated the defendant's legitimate expectations of privacy. Establishing a legitimate expectation of privacy is "a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.'" *Katz v. United States*, 389 U.S.

347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring).

■ In *Katz*, the Supreme Court held, "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." *Id.* at 351, 88 S.Ct. at 511 (citations omitted). The record indicates that Ford made no attempt to conceal the heat generated by his marijuana hothouse. While Ford was careful to prevent any light from escaping the mobile home—for example, by boarding the windows from the inside—he took affirmative steps to vent the excess heat that was detected by the FDLE's thermal imager. Ford punched holes in the floor of his mobile home and forced the warmer air out using an electric blower. He also installed an air conditioner in one part of the mobile home. Ford may not have expected the FDLE to use a "highly technical" thermal imager to detect the heat emitted from his mobile home, Appellant's Brief at 25, but given his affirmative conduct to expel excess heat from his mobile home, we find that he did not seek to preserve the fact of that heat as private. Thus, we conclude that Ford did not exhibit a subjective expectation of privacy in the heat emitted by his mobile home.

■ Even if Ford did have a subjective expectation of privacy in the heat escaping his mobile home, he still must demonstrate that his is a subjective expectation that society is prepared to recognize as being reasonable. The Supreme Court has explained that "[t]he test of legitimacy is not whether the individual chooses to conceal assertedly 'private' activity. Rather, the correct inquiry is

---

**3.** The majority of district courts and the one other circuit that has considered this issue have held that thermal or infrared imagery is not an unreasonable search under the Fourth Amendment. *See United States v. Pinson*, 24 F.3d 1056 (8th Cir.1994); *United States v. Domitrovich*, 852 F.Supp. 1460 (1994); *United States v. Porco*, 842 F.Supp. 1393 (D.Wyo.1994); *United States v. Penny–Feeney*, 773 F.Supp. 220 (D.Hawaii 1991), *aff'd*, 984 F.2d 1053 (9th Cir.1993); *United States v. Deaner*, 1992 WL 209966 (M.D.Pa.). Two district courts and one state supreme court have ruled that thermal imagery does constitute an unreasonable search. *See United States v. Field*, 855 F.Supp. 1518 (W.D.Wis.1994); *United States v. Ishmael*, 843 F.Supp. 205 (E.D.Tex.1994); *State v. Young*, 123 Wash.2d 173, 867 P.2d 593 (1994); *see generally* Lisa J. Steele, *Waste Heat and Garbage: The Legalization of Warrantless Infrared Searches*, 29 Crim.L.Bull. 19 (1993) (arguing that police should be required to obtain a warrant before scanning a dwelling with a thermal imager).

whether the government's intrusion infringes upon the personal and societal values protected by the Fourth Amendment." *Oliver v. United States*, 466 U.S. 170, 182–83, 104 S.Ct. 1735, 1743, 80 L.Ed.2d 214 (1984) (footnote omitted).

One such value that has emerged as a significant factor in the Court's Fourth Amendment analysis is the intimacy of detail and activity that a surveillance technique reveals in a particular case. In *Oliver*, for example, the Court reaffirmed the "open fields" doctrine, first established in *Hester v. United States*, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924), and held that individuals had no reasonable expectation of privacy in open fields. *Oliver*, 466 U.S. at 181, 104 S.Ct. at 1742. The Court distinguished such areas from "enclaves [that] should be free from arbitrary government interference," *id.* at 178, 104 S.Ct. at 1741, reasoning that "open fields do not provide the setting for those intimate activities that the Amendment is intended to shelter from government interference or surveillance," *id.* at 179, 104 S.Ct. at 1741.

The Court has permitted enforcement officials from a federal agency to photograph a manufacturing facility using a floor-mounted, precision aerial mapping camera from altitudes of 12,000, 3,000, and 1,200 feet without a warrant. *See Dow Chemical Co. v. United States*, 476 U.S. 227, 239, 106 S.Ct. 1819, 1827, 90 L.Ed.2d 226 (1986). In holding that the use of such a camera in an area "falling somewhere between 'open fields' and curtilage" did not intrude upon Dow's reasonable expectations of privacy, *id.* at 236, 106 S.Ct. at 1826, the Court relied solely on the device's degree of resolution:

It may well be ... that surveillance of private property by using highly sophisticated surveillance equipment not generally available to the public, such as satellite technology, might be constitutionally proscribed absent a warrant. But the photographs here are not so revealing of intimate details as to raise constitutional concerns. Although they undoubtedly give EPA more detailed information than naked-eye views, they remain limited to an outline of the facility's buildings and equipment.

*Id.* at 238, 106 S.Ct. at 1827. The Court suggested that more detailed surveillance techniques might have led to a different result, noting that "[a]n electronic device to penetrate walls or windows so as to hear and record confidential discussions of chemical formulae or other trade secrets would raise very different and far more serious questions...." *Id.* at 239, 106 S.Ct. at 1827.

Similarly, in *Florida v. Riley*, 488 U.S. 445, 109 S.Ct. 693, 102 L.Ed.2d 835 (1989), the Court suggested that the intimacy of detail was relevant for Fourth Amendment purposes. In *Riley*, the Court held that no search occurred when a police officer in a helicopter circled twice over an enclosed greenhouse at a height of 400 feet and observed through openings in the roof what he thought was marijuana. *Id.* at 450, 109 S.Ct. at 696. Acknowledging that not every "inspection of the curtilage of a house from an aircraft will ... pass muster under the Fourth Amendment simply because the plane is within the navigable airspace specified by law," the Court concluded,

As far as this record reveals, no intimate details connected with the use of the home or curtilage were observed, and there was no undue noise, and no wind, dust, or threat of injury. In these circumstances, there was no violation of the Fourth Amendment.

*Id.* at 452, 109 S.Ct. at 697.

Like the aerial photography in *Dow*, the thermal imagery at issue here appears to be of such low resolution as to render it incapable of revealing the intimacy of detail and activity protected by the Fourth Amendment. A thermal imager operates by detecting differences in the surface temperature of objects; it cannot penetrate walls or windows to reveal conversations or, as used here, human activities. Although the device used by the FDLE can detect differences as small as half of a degree, as used against Ford it could only describe conditions within the mobile home in gross detail. The FDLE operator was able to detect high heat transmission from underneath the mobile home and in one corner wall of the structure, extending up

four or five feet from the floor. Such information is neither sensitive nor personal, nor does it reveal the specific activities within the mobile home. *See United States v. Pinson*, 24 F.3d 1056, 1059 (8th Cir.1994) ("None of the interests which form the basis for the need for protection of a residence, namely the intimacy, personal autonomy and privacy associated with a home, are threatened by thermal imagery.").

Additionally, the Court's precedents regarding waste disposal suggest that Ford's expectation of privacy in his vented heat is not one that society is prepared to accept as objectively reasonable. In *California v. Greenwood*, 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988), the Supreme Court held that a homeowner did not have an objective expectation of privacy in garbage left for collection outside the curtilage of his home. *Id.* at 37, 108 S.Ct. at 1627. The Court stated that it was "common knowledge" that garbage left at the curbside is readily accessible to the public, most obviously the trash collectors for whom the garbage was deposited. *Id.* at 40, 108 S.Ct. at 1628. The heat that Ford intentionally vented from his mobile home was a waste byproduct of his marijuana cultivation and is analogous to the inculpatory items that the respondents in *Greenwood* discarded in their trash, *see id.*, smoke plumes rising from a chimney, *see Air Pollution Variance Board of Colorado v. Western Alfalfa Corp.*, 416 U.S. 861, 865, 94 S.Ct. 2114, 2115, 40 L.Ed.2d 607 (1974) (holding that a state health inspector may observe smoke plumes emitted from chimneys without a warrant because "[h]e had sighted what anyone in the city who was near the plant could see in the sky—plumes of smoke"), and scents emanating from luggage, *see United States v. Place*, 462 U.S. 696, 707, 103 S.Ct. 2637, 2644–45, 77 L.Ed.2d 110 (1983) (holding that exposure of luggage in a public place to a trained canine does not constitute a search under the Fourth Amendment). All of these cases involved waste products intentionally or inevitably exposed to the public, and the Court found that the owners did not have an objectively reasonable expectation of privacy.

Moreover, Ford exposed his waste heat to the public even if the emissions were not visible to every passerby. The Supreme Court has repeatedly held that the fact that a surveillance device allowed for super- or extra-sensory perception is not fatal to a *Katz* analysis. *See Dow*, 476 U.S. at 239, 106 S.Ct. at 1827 (precision aerial mapping camera); *Place*, 462 U.S. at 707, 103 S.Ct. at 2645 (canine sniff); *United States v. Knotts*, 460 U.S. 276, 285, 103 S.Ct. 1081, 1087, 75 L.Ed.2d 55 (1983) (radio transmitting locator). As one court observed:

> In *Greenwood*, the exposure was visual and the Court found that it was in no way diminished by the fact that the garbage was stored in opaque trash bags. Here, the exposure is heat-sensory and is in no way diminished by the fact that the source of the heat could only be detected by the use of the [thermal imager].

*United States v. Penny–Feeney*, 773 F.Supp. 220, 226 (D.Hawaii 1991), *aff'd sub nom. United States v. Feeney*, 984 F.2d 1053 (9th Cir.1993). Given the low resolution of thermal imagery and the similarities between Ford's waste heat and other emissions not protected by the Fourth Amendment, we conclude that Ford did not have an objectively reasonable expectation of privacy in the heat emanating from his mobile home.

## III. CONCLUSION

Ford challenges the district court's denial of his suppression motion, in which he contended that the use of a thermal imager to detect heat emitted from his mobile home was an unconstitutional, warrantless search. For the reasons discussed, we find that thermal imagery, as used by the FDLE against Ford, is not an unreasonable search under the Fourth Amendment. We AFFIRM.